[Cite as *Cobbin v. Cleveland Clinic Found.*, 2019-Ohio-3659.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANNE R. COBBIN, ET AL.　　　　　:

　　　Plaintiffs-Appellants,　　　:

　　　　　　　　　　　　　　　　　　　　No.　107852

　　　v.　　　　　　　　　　　　　:

CLEVELAND CLINIC FOUNDATION,　:
ET AL.

　　　　　　　　　　　　　　　　:

　　　Defendants-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-874377

---

### *Appearances:*

Percy Squire, *for appellants*.

Buckingham, Doolittle & Burroughs, L.L.C., Timothy A. Spirko, and Dirk E. Riemenschneider, *for appellees*.

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiffs-appellants, Anne and James Cobbin, appeal a trial court judgment denying their motion for a new trial against defendants-appellees, the Cleveland Clinic Foundation and Dr. Jason Ho. The Cobbins raise one assignment of error for our review:

> The trial court erred when it stated in response to a question from the jury during deliberations that in order to find the defendant Cleveland Clinic negligent it was first necessary to find [defendant] Dr. Jason Ho negligent.

{¶ 2} Finding no merit to their appeal, we affirm.

## I. Procedural History and Factual Background

{¶ 3} In January 2017, the Cobbins refiled a medical malpractice case against defendants and several Jane and John Doe Cleveland Clinic employees, including doctors, nurses, and patient assistants. According to the Cobbins' complaint, Anne underwent surgery at the Cleveland Clinic in September 2014 "to remedy a knee infection in a prosthesis that had developed from a previous knee replacement surgery." While still in the hospital after her second knee surgery, the Cobbins claimed that Anne "was dropped by a Cleveland Clinic patient assistant" and that Dr. Ho "noted [Anne's] fall," but discharged Anne the next day "without any treatment or x-rays of her leg [that] was injured during the fall."[1]

---

[1] The Cobbins alleged that Anne fell on October 1, 2014, and that she was discharged on October 2, 2014. According to excerpts of transcripts in the record, however, Anne fell sometime around 10:30 p.m. on September 30, 2014. Dr. Ho saw Anne sometime around midnight or 12:30 a.m. on October 1, 2014.

{¶ 4} The Cobbins further alleged that when Anne came home from the hospital, she was still experiencing "extreme pain and discomfort in her leg." Because of Anne's "intense pain * * * later in October 2014, an x-ray was taken."[2] Anne learned that she had "sustained a closed nondisplaced fracture of her right tibia and fibula." The Cobbins asserted that defendants violated the standard of care they owed Anne by failing to properly diagnose and treat her before they discharged her. The Cobbins alleged:

> The fracture sustained by Mrs. Cobbin occurred at the Cleveland Clinic and should have been detected as the cause of her leg pain prior to her discharge. The failure to properly diagnose and treat Mrs. Cobbin and discharge her despite symptoms of leg pain, without ordering an x-ray or any other treatment violated the standard of care owed to Mrs. Cobbin by defendants.

{¶ 5} The Cobbins raised two claims of relief in their complaint: (1) failure to diagnose and treat Anne's fractured leg, and (2) a loss of consortium claim. Specifically, the Cobbins claimed that "Dr. Ho and the John and Jane Doe defendants failed to detect or otherwise recognize that Mrs. Cobbin was suffering from a fractured leg sustained while in the custody and care of the Cleveland Clinic."

---

[2] We have very limited transcripts in the record on appeal. We only have the Cobbins' expert's testimony from the trial. We also have the Cobbins' expert's deposition testimony and transcripts of several hearings that took place before, during, and after trial (of discussions and/or arguments between counsel before the trial judge). According to excerpts of these transcripts, Anne obtained an X-ray on October 7, 2014. Also according to excerpts of transcripts, Anne testified that she could not recall anything that happened on the night of her fall. But apparently Anne did recall asking a nurse the following morning if she was going to receive an X-ray. The medical records do not reflect that Anne asked for an X-ray at any time, and at least one Cleveland Clinic employee testified that he could not recall if Anne asked him for an X-ray. Again, these "facts" come not from actual trial testimony of any witness, but from questions posed to the expert or from arguments between counsel before the trial court.

They asserted that "[t]he act of discharging and failure to treat the leg of Mrs. Cobbin given defendants['] failure to detect Mrs. Cobbin's fracture was violative of the standard of medical care owed by defendants Cleveland Clinic, Dr. Ho, John and Jane Doe[s] 1-5, to Mrs. Cobbin and the result of negligence." They claimed that this violation caused "physical and economic injury to Mrs. Cobbin." They also claimed that James experienced a loss of consortium due to Anne's "protracted pain, illness, and disability."

{¶ 6} It is undisputed that the Cobbins never amended their complaint to specifically name any nurse, other physician, or other hospital employee as an individual defendant involved in Anne's treatment. Nor did the Cobbins amend their complaint to add any other claims against defendants.

{¶ 7} The case proceeded to a three-day jury trial in August 2018. During jury deliberations, the trial court notified the parties' counsel that it had received a question from the jury asking, "[c]an we find Dr. Ho not negligent but find the Cleveland Clinic negligent?" The trial court informed the parties that it thought the answer was "no." Defendants' counsel agreed with the court, but the Cobbins' counsel did not. The following exchange then occurred:

> [PLAINTIFFS' COUNSEL]: Well, that's what I was saying yesterday about — excuse me, your Honor, what I was saying yesterday about the nurses and so forth not passing it on to the doctor. I think they can.
>
> THE COURT: What were you saying?
>
> [PLAINTIFFS' COUNSEL]: I think our argument was that the nurses and so forth should have told the doctor that Mr. and Mrs. Cobbin wanted X-rays taken.

THE COURT:  Well — I mean, this — you named Dr. Ho in the suit.

[PLAINTIFFS' COUNSEL]:  Right.

THE COURT:  He's the one responsible for ordering the X-rays.

[PLAINTIFFS' COUNSEL]:  Right.

THE COURT:  That was the whole theory of your case, right?  That he should have ordered an X-ray.

[PLAINTIFFS' COUNSEL]:  Right.

THE COURT:  It was based on his information.  That's how the interrogatories are presented.

[PLAINTIFFS' COUNSEL]:  Okay.  Well, Judge, I mean, you're the boss.

THE COURT:  So no.  The Cleveland Clinic is only liable if Dr. Ho is found negligent.  All right?

[DEFENDANTS' COUNSEL]:  Yes.

{¶ 8} The jury found in favor of defendants.

{¶ 9} Subsequently, the Cobbins moved for a new trial pursuant to Civ.R. 59(A)(1) and (9).  In their motion, the Cobbins argued that the trial court erred when it responded to the jury's question during deliberations.  The trial court denied the Cobbins' motion for a new trial.  It is from this judgment that the Cobbins now appeal.

## II.  Motion for a New Trial

{¶ 10} The only issue presented on appeal is whether the trial court erred when it told members of the jury that they could only find the Cleveland Clinic liable if they found Dr. Ho to be liable.  Therefore, we only need to determine if the trial court erred in answering the jury's question and should have granted a new trial.

**{¶ 11}** Civ.R. 59 provides in relevant part:

(A) Grounds for a new trial. A new trial may be granted to all or any of the parties on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

* * *

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

**{¶ 12}** We apply different standards of review to a trial court's ruling on a motion for a new trial filed under Civ.R. 59. *Robinson v. Turoczy Bonding Co.*, 8th Dist. Cuyahoga No. 103787, 2016-Ohio-7397, ¶ 23. A motion for a new trial premised upon a procedural irregularity under Civ.R. 59(A)(1) is reviewed for an abuse of discretion. *Id.*, citing *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201. A motion for a new trial premised upon "error of law occurring at the trial and brought to the attention of the trial court" under Civ.R. 59(A)(9), however, is reviewed under a de novo standard. *Id.*

**{¶ 13}** The Cobbins contend that the trial court erred when it responded to the jury's question because the Cleveland Clinic could be vicariously liable if members of the jury found that the evidence proved that the nurses were negligent, despite the fact that they did not explicitly name any nurses in their complaint. Specifically, the Cobbins maintain that they asked the Cleveland Clinic's nursing staff if Anne's leg was going to be X-rayed. The Cobbins state that their "requests

were either not forwarded to someone authorized to order an x-ray or were not acted upon by [the Cleveland Clinic] for other inappropriate reasons in light of the specific request from Mr. and Mrs. Cobbin and the fact it was known that an elderly person had fallen." Essentially, the Cobbins' entire argument regarding Cleveland Clinic nurses and staff is that because Anne did not receive an X-ray before she left the hospital, the nurses were negligent for failing to communicate to the doctor that Anne requested an X-ray, which in turn would make the Cleveland Clinic vicariously liable for such negligence.[3]

{¶ 14} Under the doctrine of respondeat superior or vicarious liability, a hospital is liable for the negligent acts of its employees. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578, 613 N.E.2d 1014 (1993), citing *Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519, 166 N.E.2d 765 (1960). To establish the negligence of a hospital employee, an injured party must demonstrate that a duty of care was owed to the injured party by the employee, that the employee breached that duty, and that the injuries concerned were the proximate result of the breach. *Id.*

{¶ 15} Nurses are, and have been since 1915, subject to licensure by the state. *Id.* at 579. Like physicians, professional nurses must demonstrate a level of education and proficiency required by law in order to be licensed. Nurses in a hospital clearly owe a duty to patients as set forth in R.C. Chapter 4723. Registered nurses provide care "requiring specialized knowledge, judgment, and skill derived

---

[3] According to the Cobbins' arguments, the Cleveland Clinic could only be vicariously liable for (1) the nurses' negligence in not communicating the Cobbins' request for an x-ray to Dr. Ho, and/or (2) Dr. Ho's negligence in not ordering an X-ray.

from the principles of biological, physical, behavioral, social, and nursing sciences." R.C. 4723.01(B). Nurses, however, are prohibited from "medical diagnosis, prescription of medical measures, and the practice of medicine or surgery." R.C. 4723.1251. Because they are prohibited from practicing medicine, nurses cannot pass on the efficacy of a course of treatment. *See Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 259, 553 N.E.2d 1038 (1990). But nurses are required to assist physicians when a patient is admitted to a hospital. *Berdyck* at 580.

{¶ 16} In *Berdyck*, the Ohio Supreme Court explained:

> In order to fulfill the foregoing duty, nurses must perform a competent nursing assessment of the patient to determine those signs and symptoms presented by the patient that are significant in relation to the attending physician's tasks of diagnosis and treatment. Because nurses are persons of superior knowledge and skill, they must employ that degree of care and skill that a nurse practitioner of ordinary care, skill and diligence should employ in like circumstances. Whether a nurse has satisfied or breached the duties of care owed to the patient is determined by the applicable standard of conduct.

> The standard of conduct applicable to this issue is proved by expert testimony. "In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and, that the nurse's negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph one of the syllabus. In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required. *Id.* at 103, 592 N.E.2d at 833. Examples of the latter are allegations of negligence with regard to patients who fell from their hospital beds while unattended. *See Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964); *Burks v. Christ Hosp.* (1969), 19 Ohio St.2d 128, 249 N.E.2d 829.

{¶ 17} In *Berdyck*, 66 Ohio St.3d 573, 578, 613 N.E.2d 1014, a patient, a pregnant woman, was admitted to the hospital with severe abdominal pains. She

had a history of preeclampsia, a complication of pregnancy associated with weakening kidneys. Symptoms of preeclampsia include, among others, elevated blood pressure and pain in the upper abdominal region. Severe preeclampsia can progress to eclampsia, which is signaled by the onset of seizures. The risk of eclampsia can be avoided by the administration of magnesium sulfate. The patient ended up having a grand mal seizure approximately two hours after she was admitted as a result of complications of eclampsia. The patient had a healthy baby, but the patient suffered permanent paralysis as a result of the seizure. She sued the hospital and the doctor.

{¶ 18} During arbitration proceedings, extensive evidence was presented concerning the standard of care required of the doctor, the hospital, and its registered nurses. The arbitration panel awarded judgment to the patient, assigning 80 percent liability to the doctor and 20 percent to the hospital. The patient and the doctor appealed the award to the trial court. The trial court granted summary judgment to the hospital, finding that the "plaintiff's claim for relief would require nurses to engage in the practice of medicine when their only duty to the patient is to inform the attending physician of the patient's condition and to follow the physician's orders relating to the patient's care." *Id.* at 577. The court of appeals reversed, and the hospital appealed to the Ohio Supreme Court, who accepted the case for review.

{¶ 19} The Ohio Supreme Court affirmed the court of appeals' judgment, agreeing with the plaintiff that questions of fact remained regarding the hospital's liability. The Ohio Supreme Court explained:

> In this case, as the negligence action brought by Berdyck involves the professional skill and judgment of nurses employed by the hospital, expert testimony is required to prove the relevant standard of conduct.
>
> The hospital admitted that accepted standards of nursing practice require its obstetrical staff nurses to be able to recognize major obstetrical complications, including preeclampsia. Nurse Holzapfel admitted a lack of knowledge of the symptoms of preeclampsia when Berdyck was admitted. Dr. Harlan Giles, an expert witness for Berdyck, opined essentially that standard nursing care requires that an obstetrical nurse be aware of the signs and symptoms of preeclampsia and that Nurse Pickett lacked an appropriate basic level of nursing information about that condition and its symptoms.
>
> Patricia Sexton-Zgrabik, R.N., an obstetrical nurse called as an expert witness for Berdyck, stated that a nurse presented with Berdyck's pregnant condition and symptoms should be concerned about the possibility of a seizure and should watch the patient very closely. The nurse should assess the patient's reflexes and monitor the blood pressure continuously. The nurse should also institute measures to protect against seizure, including having an oral airway or tongueblade available, padding the bed side rails, darkening the room, and positioning the patient on her left side to aid the reduction of blood pressure. The nurse should also have magnesium sulfate readily available. The witness testified that Nurse Pickett's failure to perform these procedures was conduct below that required by the applicable standard of care, and that the hospital was negligent in not providing personnel trained in the measures necessary.

*Id.* at 580-581.

{¶ 20} Turning to the present case, there are several issues with the Cobbins' arguments. First and foremost, they did not present expert testimony regarding a nurse's standard of care. In fact, the Cleveland Clinic argued at one hearing before

the trial court that it had "retained a nursing expert, but, upon representation there would be no claim against the nurses that nurse did not come in and testify."

{¶ 21} Second, although expert testimony is not necessary in a negligence action involving conduct within the common knowledge and experience of jurors, that is not the case here. Despite the Cobbins' arguments to the contrary, the necessity of an X-ray is not within the common knowledge and experience of jurors.

{¶ 22} Even assuming for the sake of argument that the Cobbins' claim — that the nurses were negligent for not forwarding their request for an X-ray to Dr. Ho — could be considered "conduct within the common knowledge and experience of jurors," we do not have transcripts of the trial testimony here, and thus, we do not know what the Cobbins did nor did not prove at trial. Absent proof of a trial court's error, an appellate court will presume regularity in the proceedings. *State v. Wilson*, 8th Dist. Cuyahoga No. 73632, 1999 Ohio App. LEXIS 1948, 7 (Apr. 29, 1999), citing *State v. Shields*, 15 Ohio App.3d 112, 472 N.E.2d 1110 (8th Dist.1984). We do not know what the nurses testified to or if any nurses actually testified (we know from counsel's arguments that at least one employee stated that he did not recall if Anne asked for an X-ray, but we do not know if this employee was a nurse). Indeed, we do not even know what Dr. Ho testified to. We do know, however, that the plaintiffs' expert agreed at trial that according to notes from five different medical professionals who saw Anne in a 32-hour period after she fell but before she was released from the hospital, including a nurse, a nurse practitioner, a physician's

assistant, and two doctors (an orthopedic resident, Dr. Ho, and an orthopedic fellow), that Anne had the same level of pain before and after the incident.

{¶ 23} Moreover, the Cobbins only alleged in their complaint that Dr. Ho and the Cleveland Clinic were negligent for failing to diagnose, or stated another way, for failing to order an X-ray that would have shown Anne had a broken leg. The law is clear that nurses are prohibited from making a medical diagnosis. And both parties agreed that the Cleveland Clinic established that only doctors can order X-rays at its hospital. Further, the Cobbins did not allege that the Cleveland Clinic was liable for Anne's fall — only for failing to diagnose and treat her broken leg.

{¶ 24} Simply put, the Cobbins failed to present any evidence that a nurse, nurse practitioner, or other Cleveland Clinic employee failed to satisfy his or her duty according to the appropriate standards of conduct required by the respective standards of conduct.

{¶ 25} The Cobbins contend that the trial court's answer to the jury's question as to whether they could find the Cleveland Clinic negligent if they did not find Dr. Ho negligent is directly contrary to the holding in *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, "as explained by" *Stanley v. Community Hosp.*, 2d Dist. Clark No. 2010CA53, 2011-Ohio-1290.

{¶ 26} In *Wuerth*, the Ohio Supreme Court held that "[a] law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice" and that "[a] law firm may be vicariously liable for legal malpractice only when one

or more of its principals or associates are liable for legal malpractice." *Id.* at paragraphs one and two of the syllabus.

{¶ 27} *Wuerth* does not help the Cobbins' argument. The Cobbins contend, however, that *Wuerth* does so "as explained by *Stanley*." In *Stanley*, the plaintiff went to the hospital for the treatment of a hepatic cyst and an abdominal abscess. While there, a nurse attempted to inject medication through an IV port that had been left in the plaintiff's left hand. As the nurse was attempting to do so, the needle became dislodged, punctured the plaintiff's vein, and caused the medication to be injected directly into the patient's left hand. As a result, the patient's theft thumb had to be amputated. The plaintiff sued the hospital, but did not name the nurses as defendants in the complaint.

{¶ 28} In its motion for summary judgment, the hospital relied on *Wuerth* to argue that hospitals cannot commit medical malpractice, nor is a hospital vicariously liable unless its employees are found to be primarily liable. Because of that, the hospital maintained that its nurses were not liable because, inter alia, they were never named in the suit. The trial court agreed with the hospital.

{¶ 29} On appeal, the Second District disagreed. It found the hospital's arguments "too expansive." *Id.* at ¶ 20. The Second District explained (as relevant to this case) that "*Wuerth* does not preclude a suit against [the hospital] for the negligence of its employee nurses despite the fact that the nurse or nurses were not named as defendants in [plaintiff's] complaint." *Id.* at ¶ 23.

{¶ 30} After review of *Wuerth* and *Stanley*, it appears that the Cobbins are arguing that the trial court erred when it answered the jury's question in the negative because the Cleveland Clinic could be vicariously liable due to negligence of its nurses despite the fact that they did not specifically name any nurses in their complaint. While it is true that hospitals can be vicariously liable for the negligence of its nurses even if the nurses are not named in a plaintiff's complaint, there still must be evidence of the standard of care for nurses and proof of the nurses' negligence; that is, proof that the nurses breached the acceptable standard of care for nurses and that the nurses' breach proximately caused the plaintiffs' injury. In this case, there is simply no evidence that any nurse violated the accepted standards of conduct for nurses.

{¶ 31} The Cobbins point to their expert's testimony as proof that they presented evidence of the unnamed nurses' negligence. But the Cobbins' expert stated in his deposition testimony that his opinion regarding the breach of standard of care only related to Dr. Ho. At trial, the Cobbins' expert opined to a reasonable degree of medical certainty that Dr. Ho deviated from accepted standards of care. When the Cobbins' counsel asked the Cobbins' expert if he had an opinion regarding the negligence of the nurses, the expert discussed Anne's fall. But again, the Cobbins did not assert *any claim relating to Anne's actual fall* and conceded as much on the record during arguments before the trial court. When the trial court then interrupted the expert because he was testifying to irrelevant matters (relating to Anne's fall), plaintiffs' counsel clarified his question, stating "I'm speaking, Doctor,

specifically with the failure to order an x-ray." The expert replied, "Okay. Yes. Not ordering an x-ray was a direct cause of the delayed diagnosis of fractures." However, only doctors can order X-rays at the Cleveland Clinic.

{¶ 32} The Cobbins conclude their arguments by asking this court, "[t]his appeal reduces to the simple question, when a 78-year-old woman falls following knee replacement surgery, should there be some protocol in place that requires an x-ray?" We decline to set standards of X-ray protocol for hospitals.

{¶ 33} After review, we conclude that the trial court did not err when it told the jury that it could not find the Cleveland Clinic liable if it found no liability on the part of Dr. Ho. Therefore, the trial court properly denied the Cobbins' motion for a new trial.

{¶ 34} Accordingly, the Cobbins' sole assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY